## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Martin J. Walsh, Secretary of Labor,
U.S. Department of Labor,

      Petitioner,

v.

Medina, Inc., a Minnesota Corporation,

      Respondent.

Case No. 21-mc-74 (JRT/ECW)

**ORDER**

---

This case is before the Court on Petitioner Martin J. Walsh, Secretary of Labor, U.S. Department of Labor's ("Petitioner" or "Secretary") Petition to Enforce Administrative Subpoena *Duces Tecum* and supporting documents (Dkts. 1 & 1-1 to 1-12, 3, 5) ("Petition"); as well as Petitioner's Motion for Adjudication of Civil Contempt Against Respondent Medina, Inc. (Dkt. 11) ("Motion").

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On May 25, 2021, the Wage and Hour Division ("WHD"), United States Department of Labor ("DOL") opened an investigation to determine Respondent Medina, Inc.'s ("Medina") compliance with the Fair Labor Standards Act ("FLSA"), including, but not limited to, compliance with the FLSA's minimum wage, overtime, and record-keeping provisions.  (Dkt. 1-7 ¶ 2; Dkt. 5-1 ¶ 2.)  Medina's registered agent is David Wordlaw ("Wordlaw") (Dkt. 1-7 ¶ 3; Dkt. 1-6 at 2; Dkt. 5-1 ¶ 3.)  On May 25, 2021, Wage and Hour Investigator Jennifer Hernandez ("WHI Hernandez") called and spoke

with an individual identified as Wordlaw.  (Dkt. 1-7 ¶ 3.)  During this phone call,

Wordlaw provided his email address to WHI Hernandez and scheduled an initial

conference for June 2, 2021.  (*Id.*)  That same day, WHI Hernandez emailed Wordlaw an

Appointment Letter for Compliance Review, which directed Wordlaw to make available

various documents related to Medina's compliance with the FLSA at an initial conference

on June 2, 2021, including the following information, for the last two years:

> 1. Names, addresses, email addresses, and telephone numbers of all business owners and company officers (e.g., President, Treasurer, Secretary, Board of Directors and other Corporate Officers) along with a company organizational chart if [Medina had] one.

> 2. Legal name of the company and all other names used by the company (e.g., "Doing Business As" names).

> 3. Records demonstrating [Medina's] gross annual dollar volume of sales. Please provide these records for the past three years (instead of two) years.

> 4. A list of all employees with their address, phone numbers, hourly rate or salary, descriptive job title, shift, and whether [Medina] considers that employee exempt from overtime for all current and former employees; [sic]

> 5. Payroll records for the past two years, including a copy of the most recently completed payroll. Payroll records should have at least the following information: employees' name, pay period ending date, hours worked, overtime paid, rate paid, gross wages, any deductions taken, and net wages; [sic]

> 6. Time records for the past two years. Time records should have employees' name, pay period ending date, daily clock in & out, total daily hours worked, & total weekly hours worked; [sic]

> 7. Birth dates for all employees under age 18 who worked during the past 24 months.

> 8. 1099 Forms and contract documents for any independent contractors, subcontractors or day laborers at this establishment.

9. Federal Employer Identification Number (FEIN).

(Dkt. 1-7 ¶ 4; Dkt. 1-8.)

On June 2, 2021, WHI Hernandez contacted Wordlaw by telephone for the initial conference, Wordlaw answered, however, he indicated he was busy and requested postponement of the initial conference for one hour so he could drop off materials at a worksite.  (Dkt. 1-7 ¶ 5.)  Wordlaw subsequently called WHI Hernandez, but she was unable to answer the phone.  (*Id.*)  WHI Hernandez called Wordlaw back several times, but he failed to answer or return her calls and voicemail message.  (*Id.*)

On June 3, 2021, WHI Hernandez emailed Wordlaw to reschedule the initial conference.  (Dkt. 1-7 ¶ 6; Dkt. 1-9.)  Wordlaw did not respond to this email. (Dkt. 1-7 ¶ 7.)

On June 8, 2021, Assistant District Director Jenna L. Carte ("ADD Carte") sent a letter to Medina, which stated all documents must be made available to WHI Hernandez within 72 hours on June 14, 2021 at 4:30 p.m. or face a possible subpoena.  (Dkt. 1-3; Dkt. 5-1 ¶ 4.)  On June 16, 2021, Wordlaw emailed WHI Hernandez stating, "we are compiling the documents requested and will have them to you today."  (Dkt. 1-7 ¶ 7; Dkt. 1-10.)  Wordlaw failed to provide any documents on June 16, 2021.  (Dkt. 1-7 ¶ 7.)  On June 21, 2021, WHI Hernandez emailed Wordlaw to advise him she had not received any records.  (Dkt. 1-7 ¶ 8; Dkt. 1-10.)  WHI Hernandez requested that Wordlaw provide the documents by close of business June 21, 2021 or the WHD would proceed with

unidentified "next steps." (*Id.*)  Neither Wordlaw nor Medina responded.  (Dkt. 1-7 ¶ 8; Dkt. 1-10.)

WHD Regional Administrator Michael Lazzeri issued a Subpoena Duces Tecum on June 30, 2021.[1]  (Dkt. 1-4; Dkt. 1-7 ¶ 9; Dkt. 5-1 ¶ 5; Dkt. 16-1.)  The Subpoena required Medina to produce the following category of documents:

1. Documents reflecting the names, addresses, and telephone numbers of each owner, corporate officer, and manager of Medina.

2. Documents reflecting the ownership interest (percentage of ownership) of each owner of Medina.

3. Documents identifying all branches and establishments, controlled by, or operating with Medina.

4. Medina's company organizational chart.

5. Documents relating to the business structure of Medina, including articles of incorporation, partnership records, membership records, and corporate filings with the Secretary of State.

6. All federal and state income tax forms submitted and signed by or on behalf of Medina, including all schedules, attachments, and worksheets.

7. Documents – including monthly, quarterly, and annual records – stating the annual gross dollar volume of sales made or business done, or total volume of goods purchased or received, by Medina.

8. Documents reflecting the full name, last known addresses, and telephone numbers of each worker performing work for Medina.

---

[1]     The initial Subpoena submitted with the Petition was unsigned.  (Dkt. 1-4 at 2.) The Court brought this to Petitioner's attention at the hearing, and Petitioner subsequently submitted a copy of subpoena via a letter (without a declaration), that purportedly digitally signed by Lazzeri on June 30, 2021.  (Dkt. 16; Dkt. 16-1.)

9.  Documents reflecting the dates of birth of each worker who was under the age of 18 during the time period described in Section A, Paragraph 8 of [the] Attachment [to the Subpoena].

10. All documents stating the job descriptions, duties, and occupations of Medina's workers.

11. Documents relating to workers treated as exempt from the minimum wage or overtime wage requirements under the Fair Labor Standards Act of 1938, as Amended, 29 U.S.C. § 201 et seq

12. All contracts and agreements between Medina and workers who Medina considers to be independent contractors or subcontractors.

13. All W-2 Forms and/or 1099 Forms distributed by Medina to workers.

14. All documents reflecting the rate of pay per worker, per pay period and any changes made to the rate of pay and applicable date(s) of the rate of pay by indicating the monetary amount paid on a per hour, per day, per week, per piece, commission on sales, or other basis for each worker.

15. All documents reflecting the total gross wages paid per pay period for each worker, including payroll records, payroll ledgers, payroll journals, pay stubs, and check stubs.

16. All documents relating to cash payments to workers.

17. All documents reflecting schedules of work for workers.

18. Documents reflecting each worker's starting and ending time and day for each workweek. If the worker was part of a workforce or employed in or by an establishment whose workers have a workweek beginning at the same time on the same day, a single document noting the time of day and beginning day of the workweek for the whole workforce or establishment will suffice.

19. All documents reflecting the hours worked each workday and total hours worked by workers each workweek, including timesheets, time cards, logs, journals, and diaries.

20. All documents reflecting the total daily or weekly regular earnings or wages due for hours worked during each workday or workweek for each worker.

21. All documents reflecting additions to, or deductions from, wages paid each pay period to each worker.

22. All of Medina's employment policies and procedures related to compensation paid to workers and hours worked (or pieces completed) by workers, including supervisory procedures, recordkeeping procedures, compensation policies, disciplinary policies, and employee handbooks.

(Dkt. 1-4; Dkt. 5-1 ¶ 5; Dkt. 16-1.)

The Subpoena required the production of documents by July 16, 2021 at 10:00 a.m. (Dkt. 1-4; Dkt. 1-7 ¶ 9; Dkt. 16-1.) ADD Carte represents that she served the Subpoena on Medina via certified mail. (Dkt. 5-1 ¶ 6.) The USPS tracking information filed as proof of service indicates that the Subpoena was sent to an address in Champlin, Minnesota with a 55316 zip code, but does not include a street address. (Dkt. 1-5 at 2.)

On July 8, 2021, an individual identifying herself as Veronica Pacheco ("Pacheco") called WHI Hernandez. (Dkt. 1-7 ¶ 10; Dkt. 1-11.) Pacheco stated that she was the owner of Medina, but that Wordlaw ran the business. (*Id.*) According to WHI Hernandez, Pacheco acknowledged service of the subpoena. (Dkt. 1-7 ¶ 10.) WHI Hernandez stated that no records had been received and that the Subpoena had a deadline of July 16, 2021. (Dkt. 1-7 ¶ 10; Dkt. 1-11.) Pacheco stated she would "work on" turning over the required documents by the Subpoena's deadline. (Dkt. 1-7 ¶ 10; Dkt. 1-11.)

As of the date of the November 8, 2021 Petition initiating this case, Medina had not produced any documents nor attempted to comply with the Subpoena. (Dkt. 1-7

¶ 11).  On November 29, 2021, the Court ordered the U.S. Marshals Service to effect service of the Petition to Enforce Administrative Subpoena Duces Tecum and supporting documents, along with a copy of the Order, on Medina within fourteen (14) days of the date of the Order; and required Respondent within fourteen (14) days of the service of that Order to either file a response to the Petition showing cause, if any, why it should not be ordered to comply in full with the Subpoena Duces Tecum or to comply in full with the Subpoena.  (Dkt. 6 at 2.)  The Petition was served on Medina through Wordlaw on November 30, 2021, and the November 29, 2021 Order was served on December 17, 2021.  (Dkts. 8-9.)

While the Petition was filed in November 2021 and the Motion was filed in January 2022, Petitioner requested that the hearing take place sometime after May 16, 2022.  (Dkt. 13 at 2.)  A hearing was held on June 6, 2022.  (Dkt. 15.)  Petitioner's counsel represented at the hearing that Respondents had not complied with the Subpoena as of the date of the hearing.  Respondent has filed no response to the Petition as required by the Court and has made no appearance in this case, including at the hearing.

The Petition seeks an Order requiring Respondent to fully comply with the Secretary's Subpoena Duces Tecum within 14 days of the date of the Order or show cause, if any, for its failure to comply with and obey the Secretary's Subpoenas Duces Tecum; requiring the U.S. Marshals Service to effect service upon Respondent a copy of the order to that effect; tolling the statute of limitations from July 16, 2021, the date Respondent first failed to comply with the Secretary's Subpoenas Duces Tecum, until such date as the Secretary informs the Court that Respondent has complied in full; and

requiring that Respondent pay all costs and expenses incurred by the Secretary in this matter.  (Dkt. 1 at 4-5.)

The Motion seeks an order for the following relief: holding Medina in civil contempt of Court; holding Wordlaw in civil contempt of Court; ordering the U.S. Marshals Service to personally serve one copy of the Secretary's Motion for Adjudication of Civil Contempt, Memorandum in Support, Supporting Exhibits and Proposed Order on Medina and Wordlaw.  (Dkt. 11 at 2-3.)  The Motion also asks the Court to order Medina and Wordlaw to produce all documents responsive to the Subpoena to the Petitioner within five calendar days of receipt of the Order by the U.S. Marshals Service; subject Medina and Wordlaw to a coercive fine of $250 per day for each subsequent day (after personal service of the requested order by the U.S. Marshals Service) they fail to comply with this Court's November 29, 2021 Order to Show Cause and fail to produce documents and comply with the Subpoena; and direct Medina and Wordlaw to pay the Secretary a compensatory fine equal to attorney's fees of $875.[2]  (*Id.* at 3.)  Moreover, similar to the Petition, the Motion seeks tolling of the statute of limitations from July 16, 2021, the date Medina and Wordlaw first failed to comply with the Subpoena, until such a date as the Secretary informs the Court that Medina and Wordlaw have complied in full.  (*Id.*)

---

[2]     The Court notes that Petitioner clarified at the hearing that the $250 per day sanction should begin after the service of the present Order until the Respondent complies with the Subpoena.

## II.    LEGAL STANDARD

It is well established that an administrative subpoena "'is properly enforced if (1) issued pursuant to lawful authority, (2) for a lawful purpose, (3) requesting information relevant to the lawful purpose, and (4) the information sought is not unreasonable.'"  *United States v. Whispering Oaks Residential Care Facility, LLC*, 673 F.3d 813, 817 (8th Cir. 2012) (quoting *Fresenius Med. Care v. United States*, 526 F.3d 372, 375 (8th Cir. 2008)).  Once an agency has satisfied these requirements, the burden shifts to the respondent to show that judicial enforcement "'would amount to an abuse of the court's process.'"  *Id.* (quoting *EEOC v. Peat, Marwick, Mitchell & Co.*, 775 F.2d 928, 931 (8th Cir. 1985)).  Given this legal standard, the Court will analyze the enforceability of the Secretary's Subpoena to Medina.

## III.    ANALYSIS

### A.    Whether the Subpoena was Issued Pursuant to Lawful Authority

The Subpoena in this case was issued pursuant to lawful authority.  Consistent with the FLSA's declared purpose of correcting and eliminating "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers" (29 U.S.C. § 202), the Eighth Circuit has recognized the statutory authority of the DOL under the FLSA to gather information of possible violations under the FLSA through the use of judicially enforceable administrative subpoenas:

> Section 11(a) of the FLSA grants the Administrator of DOL's Wage and Hour Division broad authority to investigate wages, hours, and conditions of

9

employment in covered industries and possible FLSA violations. 29 U.S.C. § 211(a). Section 9 (29 U.S.C. § 209) grants the Administrator the investigative powers and duties provided in sections 9 and 10 of the Federal Trade Commission Act, 15 U.S.C. §§ 49, 50. That Act grants the Federal Trade Commission the "power to require by subpoena" the production of documents "relating to any matter under investigation," and the power to "invoke the aid of any court of the United States in requiring . . . production of documentary evidence." 15 U.S.C. § 49. District courts are authorized, "in case of contumacy or refusal to obey a subpoena," to issue an order to produce documentary evidence, and failure to obey "may be punished by such court as a contempt thereof." *Id.*; *see Cudahy Packing Co. of La. v. Holland*, 315 U.S. 357, 363, 62 S.Ct. 651, 86 L.Ed. 895 (1942) (in enforcing an administrative agency subpoena, "there can be no penalty incurred for contempt before there is a judicial order of enforcement").

*Acosta v. La Piedad Corp.*, 894 F.3d 947, 950 (8th Cir. 2018).

As such, the Court finds that the DOL has the statutory authority from Congress to issue the Subpoena as part of its investigation of possible FLSA violations.

**B.     Whether the Subpoena was Issued for a Lawful Purpose**

Petitioner asserts that the Subpoena was issued for the lawful purpose of investigating whether Medina has been following its duties under the FLSA, including whether it has maintained records required by the Secretary's regulations.  (Dkt. 1-1 at 5-6.)  Under the FLSA, the Secretary has broad investigatory powers to determine compliance with its provisions, as Section 11(a) gives the Secretary or his designee, the WHD, authority to investigate and gather data regarding wages, hours, and other conditions and practices of employment in any industry subject to this Act; empowers the Secretary to enter and inspect such places and records as he may deem appropriate to

determine whether any person has violated the FLSA; and further requires employers to make, keep and preserve certain records:

> The Administrator or his designated representatives may investigate and gather data regarding the wages, hours, and other conditions and practices of employment in any industry subject to this chapter, and may enter and inspect such places and such records (and make such transcriptions thereof), question such employees, and investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of this chapter, or which may aid in the enforcement of the provisions of this chapter. Except as provided in section 212 of this title and in subsection (b) of this section, the Administrator shall utilize the bureaus and divisions of the Department of Labor for all the investigations and inspections necessary under this section. Except as provided in section 212 of this title, the Administrator shall bring all actions under section 217 of this title to restrain violations of this chapter.
>
> * * *
>
> (c) Records
>
> Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder. The employer of an employee who performs substitute work described in section 207(p)(3) of this title may not be required under this subsection to keep a record of the hours of the substitute work.

29 U.S.C. § 211.

"The Government, with its subpoena power, 'does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" *Whispering Oaks*, 673 F.3d at 818 (quoting *U.S. v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950)).

The respondent bears a heavy burden to disprove the existence of a valid purpose for an administrative subpoena. *See United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 316 (1978); *see also Whispering Oaks*, 673 F.3d at 818-19. Given the investigatory authority of the Secretary, and Respondent's lack of opposition, the Court finds that the Subpoena was issued to Medina for lawful purposes.

**C.      Whether the Requested Information is Relevant to the Lawful Purpose and the Requests for Documents are Reasonable**

The relevancy requirement for an administrative subpoena is not a question of evidentiary relevancy. *See Whispering Oaks*, 673 F.3d at 818. "The standard for determining the relevance of a subpoena's requests is not particularly burdensome, and indeed, a subpoena should be enforced when the evidence sought by the subpoena is not plainly incompetent or irrelevant to any lawful purpose of the agency in the discharge of its duties." *Id.* (marks and citations omitted).) The Court must also examine whether the requests for documents are unreasonable, including whether they are overly broad. *See Whispering Oaks*, 673 F.3d 819.

"The Fair Labor Standards Act requires employers to pay employees minimum wage and overtime." *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861, 866 (8th Cir. 2021) (citing 29 U.S.C. §§ 206-207.) The FLSA mandates that an employer-employee relationship must exist in order to bring claims for overtime compensation and minimum wage violations. *See Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 961-62 (8th Cir. 2015); *see also* 29 U.S.C. § 203 (r)-(s) (relating to enterprises). Moreover, pursuant to 29 U.S.C. § 211(c), the Secretary's regulations under the FLSA require certain

employers to keep records of employees' names and contact information, date of birth if under 19, hours worked each workday and total hours worked each workweek, total daily or weekly straight-time and overtime earnings, total wages paid each period, total premium paid for overtime hours, deductions from wages for each pay period, and the date of payment and the pay period covered by the payment, among other items.  *See* 29 C.F.R. § 516.2(a); *see also Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014) ("For employees subject to the overtime limits of the FLSA, employers are required to keep records of wages and hours.").  In light of the requirements and liability under the FLSA and its regulations, the Court finds that the categories of documents dealing with the ownership of Medina; the identity of its officers and owners; whether it constitutes an employer or part of enterprise the purposes of the FLSA; documents regarding the identity, classification, and payment of employees for time worked; and Medina's employment policies regarding the same, are not overly broad and are relevant to the DOL's duties under the FLSA.  That said, the Subpoena is limited to those documents in the possession, custody, or control of Medina.  *See Acosta.*, 894 F.3d at 951-52.

## D.   Conclusion

For all of the above reasons, the Court finds that the Subpoena is enforceable.  To this end, the U.S. Marshals Service is directed to effect service of the Subpoena at Docket Entry 16-1 on Respondent, along with a copy of this Order.  Respondent shall have 14 days from service of the Subpoena and a copy of this Order to produce to Petitioner the

documents requested by the Subpoena that are in Respondent's possession, custody, or control.

**E.     Motion for a Finding of Judicial Contempt and Sanctions**

As stated previously, Petitioner seeks through his Motion an order finding Medina and Wordlaw in civil contempt of Court; subjecting Medina and Wordlaw to a coercive fine of $250 per day for each subsequent day (after personal service of the Order by the U.S. Marshals Service) they fail to comply with this Court's November 29, 2021 Order to Show Cause and fail to produce documents and comply with the Subpoena; and directing Medina and Wordlaw to pay the Secretary a compensatory fine equal to attorney's fees of $875.

With respect to a finding of judicial contempt, the Eighth Circuit has held as follows:

> The subpoena is a judicial process, punishable by the judicial remedy of contempt. Congress expressly authorized DOL to issue administrative subpoenas and to seek judicial enforcement by contempt. But Congress provided that there can be no contempt remedy except for violation of a judicial order enforcing the agency's subpoena. This necessarily subjects the agency's statutory subpoena power to the same limitations that restrict the enforcement of judicial subpoenas by contempt.

*Acosta*, 894 F.3d at 951.  While the Court had previously ordered Respondent to respond to the Petition or to comply with the Subpoena, it made no finding as to the enforceability of the Subpoena.  As such, the Court denies the Motion without prejudice, and additionally denies the Motion as premature because Petitioner clarified at the hearing that Petitioner seeks an Order imposing a coercive sanction after entry of this Order and service of this Order on Medina and/or Wordlaw.

That said, should Medina and/or Wordlaw fail to comply with this Court's Order enforcing the Subpoena, they do so at their own peril, as Petitioner may renew his motion for a finding of contempt and the imposition of sanctions at that time.[3]

## F.    Tolling of the Statute of Limitations

Petitioner seeks tolling of the applicable statute of limitations for the FLSA from July 16, 2021, the date Respondent first failed to comply with the Secretary's Subpoenas Duces Tecum.  It is unclear whether the statute of limitations has expired for any potential FLSA claims related to past and present Medina employees.  The Court notes that generally, under the FLSA, the statute of limitations is "two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).

"The doctrine of equitable tolling permits a plaintiff to 'sue after the statutory time period has expired if he has been prevented from doing so due to inequitable circumstances.'"  *Pecoraro v. Diocese of Rapid City*, 435 F.3d 870, 875 (8th Cir. 2006) (cleaned up).  Equitable tolling of a statute of limitations is a "limited and infrequent form of relief."  *Smithrud v. City of St. Paul*, 746 F.3d 391, 396 (8th Cir. 2014).

---

[3]     The Court also denies the Motion as to the request for attorney's fees in the amount of $875 on the additional basis that Petitioner has failed to provide any support in the form of a declaration or other competent evidence supporting the amount of fees sought, as the Declaration of Kevin Koll (referenced as Ex. B in Petitioner's Memorandum in Support of the Motion (*see* Dkt. 12 at 9)) was never filed with the Court. *See Bell v. Am. Accts. & Advisers, Inc.*, No. CV 18-2474 (MJD/ECW), 2018 WL 6718573, at *2 (D. Minn. Nov. 15, 2018), *R. & R. adopted*, 2019 WL 1405606 (D. Minn. Mar. 28, 2019) ("Ultimately, the fee applicant bears the burden to produce evidence supporting the hourly rates charged and the hours expended.") (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

"[E]quitable tolling is an exception to the rule, and therefore should be used only in exceptional circumstances." *Firstcom, Inc. v. Qwest Corp.*, 555 F.3d 669, 675 (8th Cir. 2009). "The party who is claiming the benefit of an exception to the operation of a statute of limitations bears the burden of showing that he is entitled to it." *Wollman v. Gross*, 637 F.2d 544, 549 (8th Cir. 1980). The party seeking equitable tolling must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Firstcom*, 555 F.3d at 675 (cleaned up); *see also Smithrud*, 746 F.3d at 396. Courts within this District have applied this standard to FLSA collective actions. *See, e.g.*, *Olukayode v. UnitedHealth Grp.*, No. 19-CV-1101 (DSD/HB), 2020 WL 1486058, at *2 (D. Minn. Mar. 27, 2020); *Gamble v. Minn. State-Operated Servs.*, 16-cv-02720-JRT-KMM, 2018 WL 7254598, at *1 (D. Minn. Nov. 14, 2018) (applying *Smithrud*), *R. & R. adopted by* 2019 WL 313034 (D. Minn. Jan. 24, 2019); *Holaway v. Stratasys, Inc.*, Civil No. 12-998 (PAM/JSM), 2012 WL 12895690, at *4 (D. Minn. Oct. 30, 2012).

The Court also acknowledges that some courts have equitably tolled for the time-period during which a respondent refused to comply with a lawful subpoena. *See, e.g., Acosta v. Xcel Commc'ns of S. Alabama, Inc.*, No. MC 19-0001-WS-N, 2019 WL 1370869, at *6 (S.D. Ala. Mar. 26, 2019); *Acosta v. Quality Construction, Inc.*, 2018 WL 7514591, *3 (D. Colo. Dec. 21, 2018) ("The Court finds that under these circumstances equitable tolling of the statute of limitations is appropriate until Respondent has fully complied with the subpoena. To reach any other conclusion would allow Quality Construction to defeat a potentially meritorious action by refusing to comply with a valid

subpoena."); *but see*, *Acosta v. GT Drywall, Inc.*, No. MC 17-0006-JGB (KKX), 2017 WL 3262109, at *4 (C.D. Cal. June 26, 2017) ("[G]ranting Petitioner's request to toll the statute of limitations until Petitioner has notified the Court that Respondents have fully complied with the Subpoena is a duration that could be endless without any manner to assess whether Petitioner is proceeding with all reasonable diligence.  Petitioner can seek equitable tolling at a later date if the need arises."). *R. & R. adopted*, 2017 WL 3251388 (C.D. Cal. July 28, 2017)

Here, the Court has concerns regarding Petitioner's request for equitable tolling beginning July 16, 2021, given that Petitioner did not file his Petition until November 2021, and asked the Court to delay the hearing enforcing the Subpoena until after May 16, 2022 due to DOL staffing issues.  (*See* Dkt. 13 at 2.)  This may not comport with the necessary finding of diligence for purposes of tolling under the Eighth Circuit caselaw. (*See supra* at 16.)  That said, this Court will not render a decision as to tolling until it is determined whether Respondent will comply with this Order in the time specified.  *See Acosta*, 894 F.3d at 953 ("For these reasons, we reverse the district court order holding La Piedad in civil contempt for failing to produce documents in response to Request No. 2.  This eliminates the basis for the district court's decision to toll the statute of limitations until La Piedad 'fully responds to the subpoena,' and that order is likewise reversed.").

## IV.   <u>ORDER</u>

Having considered the Petition, Motion, and supporting documents, and based on the files, records, and proceedings herein, **IT IS ORDERED** that:

1.    The Petition to Enforce Administrative Subpoena Duces Tecum (Dkt. 1) is **GRANTED** in part.

2.    The U.S. Marshals Service is directed to effect service of this Order along with a copy of the Subpoena at Docket Entry 16-1 on Respondent Medina, Inc. within fourteen (14) days of the date of this Order.

3.    Petitioner Martin J. Walsh, Secretary of Labor, U.S. Department of Labor, shall file proof of service on the docket once the service directed in paragraph 2 is effected.

4.    **Respondent Medina, Inc. will have fourteen (14) days from the date the service directed in paragraph 2 is effected to produce to Petitioner all documents in its possession, custody, or control in response to the Subpoena**.

5.    Petitioner's Motion for Adjudication of Civil Contempt Against Respondent Medina, Inc. (Dkt. 11) is **DENIED WITHOUT PREJUDICE**.

6.    Petitioner will file with the Court a letter after the deadline in paragraph 4 of this Order expires to notify the Court whether Respondent Medina, Inc. has complied with this Order and may renew his motion for contempt at that time to the extent that Respondent Medina, Inc. fails to comply with the Court's Order.

Dated: August 12, 2022              *s/Elizabeth Cowan Wright*
                                    ELIZABETH COWAN WRIGHT
                                    United States Magistrate Judge